

ENTERED
09/15/2017

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| HOUSTON BLUEBONNET, L.L.C. | § | CASE NO: 16-34850 |
| Debtor(s) | § | |
| | § | CHAPTER 11 |
| | § | |
| HENRY R. HAMMAN, *et al* | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 16-3251 |
| | § | |
| KENNETH R. LYLE, *et al* | § | |
| Defendant(s) | § | |

## <u>MEMORANDUM OPINION</u>

Henry R. Hamman *et al*. filed suit in Texas state court against Kenneth Lyle *et al*. claiming to have succeeded to an oil and gas interest in a 20-acre leasehold and seeking to be paid net profits or proceeds pursuant to that interest.  Houston Bluebonnet, L.L.C. filed a notice of removal of the state court proceeding to this Court.  Lyle filed a motion for summary judgment asserting that the Hammans' predecessors previously assigned all of their reserved rights and interests in the 20 acres to Humble Oil & Refining Company in 1920, leaving the Hammans with no interest or claims in oil and gas production from the leasehold.  The Hammans filed a cross-motion for partial summary judgment, arguing that the 1920 agreement did not modify the obligations of Humble and its successor working interest owners to account for and pay the Hammans the net proceeds or profits from production on the 20 acres.

The Hammans' motion for partial summary judgment is granted.  Lyle's cross-motion is denied.

## Background

On June 6, 1913, Ima Hogg *et al.* executed an oil and gas lease to John Hamman.  (ECF No. 19-2).  The Hogg lease covered approximately 700 acres of land in Brazoria County, Texas, and reserved a 1/8 royalty interest for the Hoggs.  (ECF No. 19-2 at 1–2).

On October 17, 1913, John Hamman and George Hamman *et al.* assigned the Hogg lease and other leases to Producers Oil Company.  (ECF No. 19-3).  As part of the assignment, George Hamman, J.C. McKallip, and F.N. Bullock received a 1/8 net proceeds interest in the sale of oil, gas, or other minerals produced from the underlying leaseholds.  (ECF No. 19-3 at 6).  George Hamman and J.C. McKallip were to receive 5/6 of this 1/8 net proceeds interest while F.N. Bullock was to receive the remaining 1/6 after first deducting all royalties due to the original lessors or others under the leases, as well as all expenses related to the ownership, operation, and marketing of oil, gas, and other minerals produced under the leases.  (ECF No. 19-3 at 6–7).

As of February 20, 1919, a portion of the Hogg lease was assigned to Humble by Dan Japhet *et al*.  This assignment included 20 acres located in the West Columbia Oil Field; these 20 acres represent the leasehold at issue in this adversary proceeding.  (ECF No. 18 at 6; ECF No. 19 at 4).

On June 22, 1920, George Hamman, John Hamman, F.N. Bullock, and Clarion Oil Company, owners of the 1/8 net proceeds interest in the 20 acres, entered into a settlement agreement and assignment with Humble, owner of the 7/8 working interest in the 20 acres on that date.  (ECF No. 19-1; *see also* ECF No. 19 at 4).  The 1920 agreement and assignment accomplished the following:

> 1. Paragraph 1 ratified all accounts kept by Humble and recognized a restricted credit to the net proceeds owners of $182,451.72 on account of oil and gas production on and prior to April 12, 1920.  (ECF No. 19-1 at 2).

2.  Paragraph 2 provided that the 7/8 working interest in the underlying acreage would become Humble's property, subject to the net proceeds owners' option under Paragraph 3 to convert their 1/8 net proceeds interest into a 1/8 working interest in kind.  (ECF No. 19-1 at 3–4).  If they chose to convert their net proceeds interest into a working interest, the net proceeds owners would be required to pay their share of working interest expenses.  (ECF No. 19-1 at 3–4).

3.  Paragraph 4 allowed the net proceeds owners to convert their 1/8 working interest back to a profit-sharing interest if they previously converted their original 1/8 net proceeds interest into a working interest pursuant to Paragraph 3.  (ECF No. 19-1 at 4).  The net proceeds owners may exercise their options to convert their interest as often as they desire.  (ECF No. 19-1 at 5).

4.  Paragraph 7 stated that, in order not to modify or change the rights or obligations of Humble with relation to third parties, the net proceeds owners agreed to "transfer and assign to [Humble] all of their rights which they hold with respect to the leased premises . . . save where such grant might conflict" with the net proceeds owners' rights. (ECF No. 19-1 at 5).

5.  Paragraph 8 provided that, except as changed within the agreement, the duties and rights of the net proceeds owners and Humble as existed prior to the agreement remained unchanged.  (ECF No. 19-1 at 6).

Through numerous conveyances, Lyle acquired a portion of Humble's interest in the 20 acres.  (ECF No. 18 at 9).

Henry R. Hamman and the George and Mary Josephine Hamman Foundation filed suit on November 25, 2013, in the 149th District Court of Brazoria County, Texas, against Kenneth Lyle and 13 other defendants.  (Case No. 75054-CV).  The Hammans claimed to have succeeded to a portion of the net proceeds interest reserved by George Hamman, J.C. McKallip, and F.N. Bullock in the 1913 assignment to Producers, and to be a successor of George Hamman.  (ECF No. 18 at 3).  Consequently, the Hammans allege that they are entitled to net profits or proceeds from oil production on the 20 acres subjected to the 1920 agreement.  (ECF No. 19 at 2).  Laura Hamman Fain and Elizabeth Hamman Oliver joined the Hammans as plaintiffs and successors of George Hamman in January 2016.  (ECF No. 18 at 3).

On September 30, 2016, Houston Bluebonnet, L.L.C., a defendant in the Hammans' state court action, filed a chapter 11 bankruptcy case.  (Case No. 16-34850).  Houston Bluebonnet subsequently filed a notice of removal of the Hammans' state court action on November 9, 2016, giving rise to this adversary proceeding.  (ECF No. 1).

Lyle filed a motion for summary judgment in this adversary proceeding on July 10, 2017. (ECF No. 18).  In that motion, Lyle argued that the Hammans hold no interest in the current oil production on the 20 acres because their predecessor assigned all interest in that acreage to Humble via paragraph 7 of the 1920 agreement. (ECF No. 18 at 2).  This position, in Lyle's view, was confirmed by the Texas Supreme Court's opinion in *Sheffield v. Hogg*, 77 S.W.2d 1021 (1934).  (ECF No. 18 at 8).

Also on July 10, 2017, the Hammans filed a cross-motion for partial summary judgment. (ECF No. 19).  The Hammans contend that the clear language of the 1920 agreement did not modify the obligations of Humble and its successors to account for and pay the Hammans' net proceeds or profits interest from operations on the 20 acres.  (ECF No. 19 at 2).

The Court held oral arguments on Lyle's and the Hammans' cross-motions for summary judgment on August 7, 2017.  The Court took this matter under advisement at the conclusion of that hearing.

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (C), and (O).  This adversary proceeding has been referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).

**Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings.  A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 249 (5th Cir. 2012).  "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact.  FED. R. CIV. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  FED. R. CIV.

P. 56(c)(3).   The Court should not weigh the evidence.   *Wheat v. Fla Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016).   A credibility determination may not be part of the summary judgment analysis.   *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.   FED. R. CIV. P. 56(c)(2).   Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues.   *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."   *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).   The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial.   *Celotex Corp. v. Cattrett*, 477 U.S. 317, 326 (1986).   Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.   FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24.   The non-moving party must cite to specific evidence demonstrating a genuine dispute.   FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324.   The non-moving party must also "articulate the manner in which that evidence supports that party's claim."   *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).   Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof on an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Id.* at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.   *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

## Analysis

### *Interpretation of the 1920 Agreement*

The prime issue in this proceeding is whether the 1920 agreement transferred all of the Hammans' rights in the 20 acres.

Lyle argues that the 1920 agreement assigned to Humble and its successors—including Lyle—all of the Hammans' rights originally reserved in the 1913 assignment.  (ECF No. 18 at 9).  Specifically, Paragraph 7 of the 1920 agreement states that the net proceeds owners transferred and assigned to Humble "all of their rights which they hold with respect to the leased premises herein described under the" 1913 assignment to Producers Oil.  (ECF No. 19-1 at 5; ECF No. 18 at 10).  Based on this language, Lyle asserts that the Hammans did not succeed to any interest in the 20 acres and are thus not entitled to be paid a net profits or proceeds.  (ECF No. 18 at 14).

Conversely, the Hammans argue that, when read as a whole, the 1920 agreement shows a clear intention by the net proceeds owners and Humble to maintain an ongoing profit-sharing or working interest relationship.  (ECF No. 19 at 13).  While Paragraph 7 does include the language cited by Lyle, the Paragraph concludes with the clause "save where such grant might conflict with the rights of [the net proceeds owners] under this adjustment of interest."  (ECF No. 19-1 at 5; ECF No. 19 at 11–12).  In conjunction with Paragraph 8, which declares that, except as modified by the other paragraphs, the duties of Humble to the net proceeds owners "shall remain unaffected and unchanged," the Hammans conclude that their predecessors retained a net proceeds interest in the 20 acres.  (ECF No. 19-1 at 6; ECF No. 19 at 19).

Under Texas law, the interpretation of an unambiguous deed is a question of law for the presiding court.  *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986).  A court's primary duty when construing an unambiguous deed conveying mineral interests is to ascertain the intent of the contracting parties from the deed's language.  *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016).  When seeking to ascertain the intention of the parties, a court examines the document in its entirety and attempts to harmonize all parts of the instrument and give effect to all of its provisions.  *Id.* at 16; *Altman*, 712 S.W.2d at 118; *Benge v. Scharbauer*, 259 S.W.2d 166, 167 (1953).  Where the intention of the parties can be ascertained from the parts of an instrument, that intention prevails over any arbitrary rules of construction.  *Harris v. Windsor*, 294 S.W.2d 798, 800 (1956); *see also Luckel v. White*, 819 S.W.2d 459, 462 (Tex. 1991) (rejecting mechanical rules of construction, such as giving priority to certain clauses over others).  Facts and circumstances surrounding the execution of a contract may be considered as an aid when interpreting a contract's provisions.  *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981).

The language of the 1920 agreement preserved the Hammans' interest in the 20 acres despite the conveyance to Humble.  Although Paragraph 7 of the 1920 agreement assigns all of the net proceeds owners' rights in the 20 acres to Humble, that Paragraph also contains a savings clause.  (ECF No. 19-1 at 5).  This savings clause prevents any transfer of the net proceeds owners' interests in the 20 acres "where such grant might conflict with the rights" reserved to the net proceeds owners and their successors under the 1920 agreement.  (ECF No. 19-1 at 5).  As listed above, Paragraph 2 provides Humble with 7/8 working interest in the acres subject to the net proceeds owners' 1/8 net proceeds interest and option to convert that interest to and from a 1/8 working interest.  (ECF No. 19-1 at 3–5).  Because this interest is specifically reserved in the 1920 agreement, the net proceeds owners retained this interest even after entering into the 1920 agreement via the savings clause of Paragraph 7.  Accordingly, no genuine dispute exists to the fact that the net proceeds owners' successors, the Hammans as the net proceeds owners, maintain a 1/8 interest in the 20 acres.

### *Application of Res Judicata*

Lyle alternatively argues that the Hammans' alleged rights are precluded by the Texas Supreme Court's decision in *Sheffield v. Hogg*, 77 S.W.2d 1021 (1934).  In that case, the Hoggs challenged the tax assessment of their 1/8 royalty interest in the entirety of the 700 acres of the Hogg lease.  77 S.W.2d at 1021–22.  Five private oil corporations engaged in the production of oil under the Hogg lease, including Humble, were also made defendants in the proceeding.  *Id.* at 1022.  Ultimately, the court found that the Hoggs' 1/8 royalty interest was a real property interest, making the tax assessment at issue in that case valid.  *Id.* at 1030.  As part of its decision, the court recognized that the defendant oil companies owned separate portions of the

oil and other minerals in the leasehold and paid the yearly taxes on 7/8 of the oil and minerals in and under the leasehold.  *Id.* at 1023.

Following from this decision, Lyle argues that the Texas Supreme Court recognized that Humble and the other oil defendants within *Sheffield v. Hogg* owned a 7/8 interest in the Hogg leasehold while the Hoggs owned the remaining 1/8 interest.  (ECF No. 18 at 8).  The Hammans thus could not own an interest in the 20 acres because the successors of the oil defendants and the Hoggs would collectively own 8/8 of the leasehold.  Accordingly, based upon res judicata, Lyle argues that the Hammans do not hold an interest in the 20 acres.  (ECF No. 22 at 7).

Res judicata precludes the relitigation of claims previously and finally adjudicated, or claims that arise out of the same subject matter and that could have been litigated in a prior action.  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).  In order for res judicata to apply, proof of the following elements must be present: (i) a prior final judgment on the merits by a court of competent jurisdiction; (ii) the identity of the parties or those in privity with them; and (iii) a second action based on the same claims as were raised or could have been raised in the first action.  *Id.*  A final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose.  *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 630–31 (Tex. 1992).

To determine if a person is in privity with a party to the previous suit, Texas courts look to whether that person: (i) could control the previous action even if she was not a party to it; (ii) could have been represented by a party to the previous action; or (iii) is a successor in interest to a party to the prior action.  *Amstadt*, 919 S.W.2d at 653.  To determine whether a prior lawsuit involved the same basic subject matter as a current case, courts look to the factual basis of the complaint in the later matter.  *Id.*

The Texas Supreme Court's decision in *Sheffield v. Hogg* does not prevent the Hammans from maintaining an interest in the 20 acres.  The court's decision did result in a final judgment on the merits of whether the Hoggs were required to pay taxes on their 1/8 royalty interest.  *Sheffield*, 77 S.W.2d at 1031.  However, *Sheffield* only recognized and dealt with the interests constituting the Hogg lease.  The Hammans' 1/8 net proceeds interest recognized under the 1920 agreement is not an interest carved out of the Hogg lease's 8/8ths.  Instead, the Hammans' interest is carved out of the oil defendants' 7/8 interest, particularly the 20 acres.  Accordingly, the court's recognition that the Hoggs' and defendants' interests constitute the total interest in the Hogg lease did not deal with the Hammans' interest in the 20 acres nor finally determine that the Hammans do not hold such an interest.

Additionally, the Hammans were not a party in *Sheffield* or in privity with any party within the case.  Neither the Hammans nor their predecessors were included in the case as plaintiffs or defendants.  In regards to privity, the Hammans: did not have any relation to or control over the Hoggs or oil defendants; were not represented by any of the parties in the case nor was their net proceeds interest; and did not succeed to any of the parties' interests.  Consequently, the Hammans were not in privity with any party in Sheffield and thus no genuine dispute as to any material facts exists in regards to whether the Hammans are precluded from litigating their claim in this proceeding.

The Hammans' motion for partial summary judgment is granted and Lyle's cross-motion is denied.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **September 15, 2017.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE